**UNITED STATES v. HOLDSWORTH et al.**
**No. 4715.**

District Court, D. Maine, S. D.
March 29, 1948.

Joseph Hargedon, Sp. Asst. to the U. S. Atty., of Boston, Mass., A. L. Lessard, U. S. Atty., and Edward Harrigan, Asst. U. S. Atty., both of Portland, Me., for plaintiff.

Daniel E. Crowley, of Biddeford, Me., Edward S. Titcomb, of Sanford, Me., Edward M. Dangel and Leo E. Sherry, both of Boston, Mass., for defendants.

CLIFFORD, District Judge.

On June 24, 1946, the Grand Jury of the United States District Court for the District of Massachusetts returned an indictment charging Clifford Holdsworth and Lloyd C. Greene with violations of 18 U.S.C.A. § 338, commonly known as the Mail Frauds Statute, and with a conspiracy, 18 U.S.C.A. § 88, to violate Section 338.

On January 27, 1947, after hearing had on various motions filed by the two defendants in Massachusetts, the Judge of the United States District Court for the District of Massachusetts granted the motion to transfer the proceedings to the United States District Court for the District of Maine under Rule 21(b) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687. Some months elapsed between the granting of this motion and affirmative action on the part of the Government concerning the motions made by each defendant (1) to dismiss the indictment, (2) to strike parts of the indictment, (3) to confine the Government to certain counts, (4) to obtain a bill of particulars, and (5) to inspect books in the custody of the Government.

On February 9, 1948, the attorneys for both the Government and the defendants conferred in chambers with this Court concerning the above motions. The motion to inspect books had been rendered moot, and it was agreed that all the remaining motions could be regarded as consolidated with and covered by the motions to dismiss the indictment. Briefs in support of and opposing these motions have been filed by the parties.

The indictment consists of twenty-seven counts. The first twenty-six counts are brought under 18 U.S.C.A. § 338, and charge violations of the Mail Frauds Statute. The twenty-seventh count is brought under 18 U.S.C.A. § 88, and charges the same defendants with a conspiracy to violate the above cited Mail Fraud Statute.

The indictment charges that the defendants "did devise a scheme, device and artifice to defraud, and for obtaining money and property by means of false representations and pretenses from the Goodall Worsted Company (now known as the Goodall-Sanford, Inc.) a corporation organized under the laws of the State of Maine and with an usual place of business in said Sanford." (Count one, para. 1.)

It further charges that "the said Goodall Worsted Company had in its service and employ, the defendants, Clifford Holdsworth, who was in control of, and had charge, management, and operation of part of its plant, and especially of the technical manufacturing department thereof, and as such superintendent he was also employed for the purpose of, and was authorized and empowered, when specifically directed, to recommend for purchase, to assist in the purchase, to purchase and to accept for and on behalf of the said Goodall Worsted Company, some of the raw materials used in the said manufacturing business and in particular, mohair wool, so-called, and other wool, and further to direct and control the amount and quantities of such articles used in the operation of the said manufacturing plant, and in the conduct of said manufacturing business." (Count one, para. 3.)

A further allegation is that the Robert M. Pitt Co., Incorporated, was engaged in Boston as a broker and dealer in mohair and other wools used in the manufacture of fabrics similar to those manufactured by the Goodall Worsted Company. (Count One, para. 5.) The indictment charges that defendant Holdsworth owned certain wool, (Count One, para. 9) shipment of which to the Goodall Worsted Company he procured for purposes of grading into various classifications known to the textile trade (Count One, para. 6), and that "it was made to appear by said defendants" that the vendor and consignor of the wool shipped was the Robert M. Pitt Co. (Count One, para. 9), concealing the fact from the Goodall Worsted Company that defendant Holdsworth was the owner and was making a profit on the transaction (Count One, para. 10).

It is further charged that the "said mohair and other wool, so shipped for grading and classification to the Goodall Worsted Company, * * * was at the direction of the same defendant Clifford Holdsworth, fraudulently and improperly graded to a higher commercial or textile classification than that to which the said wool belonged." (Count one, para. 7.)

The indictment further alleges that the wool "after having been fraudulently and wrongfully graded, regraded or upgraded, * * * was sold by the Robert M. Pitt Co., Incorporated, to the Goodall Worsted Company, at a price higher than the ordinary regular and honest price of said wool, due to its higher and improper classification or upgrading made as aforesaid." (Count One, para. 8.)

As another part of the scheme to defraud, it is charged, that "the net proceeds of the fraudulent sales * * * were deposited by the said Robert M. Pitt Co., Incorporated, in a banking depository in said Boston in the name of said Clifford Holdsworth." (Count One, para. 13.)

Making reference to defendant Greene, the indictment charges that he was the executive Vice-President of the Goodall Worsted Company and had as one of his duties that of approving for payment various invoices and vouchers covering "consignments of mohair and other wool," (Count One, para. 4.) that he approved the various invoices sent by the Robert M. Pitt Co., Incorporated, to the Goodall Worsted Com-

pany, "well knowing that the actual owner of said goods was in reality the defendant Clifford Holdsworth" (Count One, para. 14).

Paragraph 12 of Count One contains a blanket allegation of the use of the United States mail to send invoices, confirmations, and bills of lading from the Robert M. Pitt Co., Incorporated, at Boston to the Goodall Worsted Company at Sanford, as well as to send checks, sorting reports and other writings from the Goodall Company to the Pitt Company. Paragraph 15 of Count One, and Counts Two through Twenty-six charge the specific uses of the United States mails for specified pieces of mail.

Generally, the defendants argue that this indictment does not charge a crime, that it is vague, uncertain and indefinite in its terms, and that Count One is duplicitous. More specifically it is argued that the indictment must fail because it does not allege a fraudulent intent, it does not allege a false representation, defendant Holdsworth, not being "specifically directed" to purchase the wool, could classify and sell it on any terms he wished, and the scheme is not set forth with sufficient detail.

There is no question as to the general standard of certainty in indictments required in the Federal Courts, Rule 7 (c) of the Rules of Criminal Procedure states: "The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."

■ It is familiar law that an indictment must charge all the essential elements of the offense with sufficient clarity to advise the accused of the nature of the charges against him, to enable him to prepare his defense, and to enable him to plead a judgment of acquittal or conviction in bar to a subsequent proceeding for the same offense. United States v. Hess, 124 U.S. 483, 8 S.Ct. 571, 31 L.Ed. 516.

Having in mind this standard and the allegations of the indictment which have just been set forth in some detail, the Court does not feel that the indictment should be dismissed as to the defendant Holdsworth.

The gist of the offenses, the mailings, have been set forth in detail. The scheme to defraud, not having to be set forth in equal detail, and not being restricted to frauds recognizable in the old-common law, is also described in clear enough outline, reading the indictment as a whole, so that the defendant will know what he has to meet to prepare a defense, and can make a satisfactory plea in bar to a subsequent prosecution. It has at no time been persuasively indicated how he would be prejudiced in this regard.

■ The alleged fraudulent scheme in this case is similar in type to that in Riddle v. United States, 5 Cir., 279 F. 216, where cotton represented to be of a certain weight, grade, and quality was in fact of a lesser weight, grade, and quality. The scheme as alleged falls within the scope of the definition in Harrison v. United States, 6 Cir., 200 F. 662, at page 665: "It is by the decisions settled, not as an all-inclusive definition, but as one sufficient for the purposes of this case, that the statutory 'scheme to defraud' may be found in any plan to get the money or property of others by deceiving them as to the substantial identity of the thing which they are to receive in exchange; and this deception may, of course, be by implication as well as by express words."

■ Also to the point is the statement of the court in Rude v. United States, 10 Cir., 74 F.2d 673, at page 676; "A scheme whereby customers are to be induced to part with their money by leading them to believe they are receiving something different from, superior to, and worth more than what is actually being sold, is an objectionable one within the intendment of section 215, supra (18 U.S.C.A. § 338), although the articles to be sold will approximate in commercial value the price to be asked and received."

The above cited cases did not involve, as does this case, an alleged defrauder who enjoyed a position of responsibility in the company which was allegedly defrauded. The general fiduciary nature of defendant Holdsworth's position cannot be put aside from the consideration of this indictment because of the absence of any direct allegation that he was "specifically directed" to purchase the wool in question.

152

■ Neither does the indictment fail for lack of any specific allegation of fraudulent intent, as such intent is implicit in the alleged undertakings described.

■ And, as already quoted in Harrison v. United States, supra, the lack of allegation of a particular false representation in words is immaterial when the alleged transactions as conducted themselves constituted sufficiently false representations. The allegation in Count One, paragraph 9, that "it was made to appear" that The Robert M. Pitt Co. was the vendor is not, in view of the surrounding alleged circumstances, an inadequate allegation of a representation, if, indeed, such a specific averment is necessary.

The mere fact that defendant Greene was executive Vice-President of the Goodall Company, without more, is not basis for ruling at this time that the company was apprised of the true nature of defendant Holdsworth's position and interest in the transactions in question.

■ Defendants urge that paragraph 12 of Count One and paragraph 15 of the same count render it duplicitous for the reason that "various mailings" are charged in paragraph 12 and a specific mailing is charged in paragraph 15. This Court reads paragraph 12, however, as being merely descriptive of the scheme pursued, and not as in itself charging an indictable offense. Such an offense, by the statute, is not "various mailings" but the placing or causing to be placed of a letter or other piece of mail in the mails to further the scheme. Thus read, the indictment is not bad for duplicity.

■ A large number of objections are taken to the use of words; for example, the coupling of "mohair" and "wool", the linking of "commercial" and "textile" classifications, the conjunctive use of "grading", "regrading", and "upgrading", the use of both "concealing" information and "refusing to disclose" information, "executing" and "attempting to execute" and "the ordinary regular and honest price of wool". The Court is ready to grant the energy and attention to detail of counsel for the defendants but is unable to persuade itself that the presence of these awkward or perhaps even technically improper words prejudices the defendants in any material way.

The Court therefore rules that the motion to dismiss the indictment against Clifford Holdsworth is hereby denied.

■ But it also feels that the few allegations which were made against defendant Greene are insubstantial. The mere approving of invoices for payment, while knowing that defendant Holdsworth was the real owner of the goods in question, does not spell out participation in a scheme to defraud. His actions if proved as alleged would be consistent with innocence. There is no allegation that defendant Greene was aware of any dishonest or improper upgrading. The indictment must therefore be dismissed as to Lloyd C. Greene.

It necessarily follows that the conspiracy count, Number 27, must also be dismissed.